[Civ. No. 12169.   First Dist., Div. Two.   Nov. 9, 1942.]

NEWCOMB & CO., LTD. (a Corporation), Respondent, v. SAINTE CLAIRE REALTY COMPANY (a Corporation), Appellant.

SAINTE CLAIRE REALTY COMPANY (a Corporation), Appellant, v. NEWCOMB & CO., LTD. (a Corporation), Respondent.

Rogers & Clark for Appellant.

Louis Oneal and Maurice J. Rankin for Respondent.

DOOLING, J. pro tem.—This is an appeal from a judgment rendered in favor of respondent, Newcomb & Co., Ltd., in two consolidated cases. In one, which was an action for declaratory relief, the respondent was plaintiff. In the other, an action in ejectment, appellant, Sainte Claire Realty Company, was plaintiff.

Appellant is the owner of the Sainte Claire Hotel in San Jose, California. On October 15, 1926, appellant entered into a written lease of this property as lessor with J. A. Newcomb and W. A. Newcomb as lessees for a term of twenty years. On October 20, 1931, the lessees with the consent of appellant lessor assigned the lease to respondent Newcomb & Co., Ltd. Under the terms of the lease the lessees agreed to pay the lessor 60 per cent of the net earnings of the hotel as rental. They further agreed to keep accurate, full and detailed books of account and to furnish the lessor with accu-

rate, full and detailed monthly statements showing the gross earnings and receipts from the business and the disbursements accruing or paid out, together with a statement of the net earnings.

The lease contained the following provisions which are particularly material to the questions presented on this appeal:

"The term 'net earnings' whenever used in this Lease is intended to and shall mean the balance remaining of the gross earnings of the Hotel business conducted upon the demised premises and rentals for any one calendar month after deducting therefrom the usual and reasonable expense of conducting such business, including the wages of all employees necessary in the conduct of the business, including Manager's salary of five hundred and eighty-three and 33/100 (583.33) dollars a month, the cost of necessary supplies, upkeep, fuel, electricity, gas, water, accident insurance, burglary insurance and employers' liability insurance, and all reasonable advertising bills. . . .

"It is understood and agreed that the salary for the manager of said Hotel shall be paid to the manager in active charge, it being provided that so long as either Mr. J. A. Newcomb or Mr. W. A. Newcomb, or both as co-managers remains in active charge as such manager or managers that the salary of $583.33 a month shall be paid to him or them and to him or them only. . . ."

During all of the period from the time of the assignment of the lease to respondent in 1931 to October 20, 1938, W. A. Newcomb resided in the Hotel Sainte Claire with his family consisting of his wife and, after the birth of a child in 1934, the child and a nursemaid. W. A. Newcomb was during all of this period the resident manager actively in charge of the hotel. J. A. Newcomb, who was W. A. Newcomb's father, up to the time of his death in 1935 spent comparatively little time in the Hotel Sainte Claire, since he was traveling about the country visiting other hotel properties operated by the Newcombs. However, there is testimony that J. A. Newcomb always considered himself co-manager of the Hotel Sainte Claire and at times when W. A. Newcomb was away J. A. Newcomb would stay there and manage the hotel.

The evidence shows that W. A. Newcomb and his family paid nothing for their rooms in the hotel, their meals, laundry, valet or telephone service and that when J. A. Newcomb was present in the hotel he and his wife likewise received such services and accommodations without payment. It is further in evidence that after J. A. Newcomb's death, his widow

went to the Hotel Sainte Claire on a few occasions and received similar accommodations and services without charge. It was her testimony that on those occasions she was engaged in business connected with the operation of the hotel.

The main contention of appellant is that the lease was breached by the furnishing of these accommodations and services to the Newcombs without accounting to appellant therefor and paying to it 60 per cent of the value thereof. Respondent met this claim by the testimony of many witnesses familiar with the business of operating hotels, including an accountant engaged in the business of supervising and auditing the accounts of hotels throughout the United States of America, that it was the general custom in hotels throughout this country to furnish the managers of hotels and their immediate families without charge rooms, meals, valet and laundry service and telephone service connected with the business operation of the hotel, and this without regard to whether the contract with the manager expressly provided therefor. This evidence of general custom was uncontradicted and appellant concedes the existence of the custom on this appeal.

The trial court found that such custom existed, that it was known to the lessor at the time of the execution of the lease, that pursuant to the custom W. A. Newcomb and J. A. Newcomb were entitled as managers to such accommodations and services for themselves and their families and that the lessor had acquiesced therein.

Appellant attacks the finding that the custom was known to the lessor at the time of the execution of the lease and cites many cases to the effect that custom to become an implied part of a contract must be known to both parties to the contract at the time of its execution. We do not find it necessary to pass upon the question whether there is substantial evidence that the lessor had actual knowledge of the custom at the time of the lease's execution, nor to consider in detail the many cases on this phase of the appeal cited by the appellant, for the reason that in our judgment these matters are concluded by the decision of our Supreme Court in *Miller* v. *Germain Seed & Plant Co.*, 193 Cal. 62 [222 P. 817, 32 A.L.R. 1215]. In that case the majority of the court exhaustively reviews the authorities and announces the applicable rule at page 69:

"The rule seems to be uniform that a party to a contract

may be bound by a custom not inconsistent with the terms of the contract, even though he is ignorant of the custom, if that custom is of such general and universal application that he may be conclusively presumed to know of the custom. . . .

"The rule that a person will be presumed to have contracted with reference to a general custom or usage whether he knew of that custom or not has frequently been invoked."

An examination of the many cases quoted from in the majority opinion in that case will show a similar statement of the rule in the decisions of the courts of other jurisdictions. It is undisputed in the evidence that the custom here relied upon was general and universal in hotels throughout the United States. It may, under the authority of the Germain case, be conclusively presumed to have been known to appellant herein.

It is further claimed by appellant, however, that the custom was inconsistent with the express terms of the lease entered into by the parties in that the salary of the manager or co-managers was expressly fixed by the terms of the contract at $583.33 per month, and in determining net earnings only this salary was authorized to be deducted from gross income. This argument overlooks the fact that the evidence shows that regardless of whether the contract provided therefor or not it was the universal custom in the hotel business to allow the manager and his family these perquisites. It also overlooks the fact that the lease expressly provides for the deduction of "the usual and reasonable expense of conducting such business." In determining what is the "usual" expense of conducting such business resort may properly be had to evidence of the universal custom in the hotel business of allowing the manager and his family rooms, meals, valet and laundry service and telephone calls as a part of the expense of the operation of the hotel. Such evidence is not inconsistent with any express term of the contract. It is both consistent with, and explanatory of, the express provision of the contract authorizing the deduction of "the usual and reasonable expense of conducting such business."

The enumeration of certain items that are expressly agreed to be included in the usual and reasonable expense of conducting such business "including Manager's salary of five hundred and eighty-three and 33/100 (583.33) dollars a

month'' does not compel a different conclusion. The enumeration of these items is not intended as a definition of ''usual and reasonable expense,'' but only as a clarification of that term to the extent that their enumeration indicates that the parties by agreement have included those items within the meaning of the term without regard to the customary definition of the words as used in the trade. The enumeration is not exclusive and left it open to the parties to prove what were the usual and reasonable expenses in the operation of that character of business in addition to the expenses so included by express agreement.

The suggestion that the furnishing of such perquisites to J. A. Newcomb and wife on the occasions when they were present in the hotel did not come within the ambit of the custom as proved is met by the terms of the lease itself which expressly authorized the employment as co-manager of J. A. Newcomb and the evidence that on his visits to the hotel he engaged actively in its management. Conceding that the proof in this regard may have been susceptible of another interpretation it was ample to support the finding of the trial court in this particular.

There remain the few occasions on which after J. A. Newcomb's death his widow enjoyed the same privileges. It may be readily conceded that she did not fall within the custom as proved. But the breach of the lease in this particular can hardly be held to have been a substantial one. In 1936 the hotel business showed a net profit of $25,335.22 and in 1937 of $26,256.48. These figures are cited only to show the extent and volume of the business. It was Mrs. J. A. Newcomb's testimony that from February, 1935, the date of her husband's death, to October 20, 1938: ''On a few occasions I stayed at the Sainte Claire Hotel during that period. . . . As I formerly said, I was there on very few occasions at any time.'' In view of the volume and extent of the business of the hotel such occasional visits cannot well be held to amount to a substantial breach of the lease justifying its cancellation.

The suggestion that the custom as proved did not apply to a lessee actually managing the leased hotel, but only to an employee of a hotel operator, is met by the testimony of Ernest B. Horwath, who had been engaged in hotel accounting throughout the United States for over twenty-five years, brought out on cross-examination, a portion of which is quoted:

"A. The lessee's case is so much stronger than that of a manager, if you want that in the record, he is practically the owner of the business, the operation for his own benefit.

"Q. It is your testimony he should charge in the case of a percentage lease . . . his meals, room accommodations, personal telephone calls and laundry against his lessor, is that true?

"A. In the absence of any statement to the contrary in the lease, yes."

He further testified that in his extensive experience he had never known of an agreement for the operation of a hotel in which these customary perquisites of the manager were covered by written agreement.

"Q. . . . Isn't it a fact sometimes the matter of manager's meals, room accommodations, telephone calls, etc., are covered by written agreement between himself and his employer?

"A. I have not seen such agreement."

It is suggested that Mr. and Mrs. S. J. Newcomb, who are interested in the business but not active in its management, occasionally stayed at the Sainte Claire. The citations to the transcript show that this is true but they do not show that they did not pay for their accommodations. The matter in any event was barely touched on in the testimony and the showing would not support a finding of a substantial, if any, breach of the lease in this particular.

There remains the question of personal telephone calls, as distinguished from those connected with the business. It is admitted that personal telephone calls were not charged against the managers. The total amount of all long distance calls by all of the Newcombs from 1931 to 1938 was $1,518.35, less than $20 per month. Of these those made by Mrs. W. A. Newcomb totaled less than $50 per year and those made by Mrs. J. A. Newcomb were so few as to be negligible. In the operation of a business of the magnitude and character of this one a much larger long distance total exclusively for business purposes might well have been expected, and, while the total cost of personal calls is not clearly established, enough appears to justify a finding that they were a trivial item in comparison to the volume of receipts and disbursements and did not substantially affect the net earnings of the business.

Appellant also complains that respondent failed to keep accurate, full and detailed books of account. The matters

complained of were the omission of the value of the managerial perquisites herein discussed. The evidence shows that the custom of hotel managements in this respect was not uniform and Henry T. Mascal, a certified public accountant called by appellant, testified:

"Q. Assuming that these perquisites were proper charges of expense of operation, then from the books as you found them, you could prepare a correct statement of net earnings of the business couldn't you?

"A. For the period which we audited which was January 1st, 1938 to August 31st, 1938, I would say yes."

Indeed it is obvious that the inclusion of the value of such perquisites as we have held properly allowable would have been offset by their deduction as usual and reasonable expenses of the business in calculating net earnings. As to the others, having held that they were not sufficiently substantial to justify the forfeiture of the lease, we must hold that their omission from the accounts was likewise not a substantial breach.

The points discussed fully dispose of the appeal and it is unnecessary to discuss other matters referred to in the briefs.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.